*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
PATRICIA L. WALKER                  :
                                    :
            Plaintiff,              :
                                    :        Case No. 12-2333 (FLW)
        v.                          :
                                    :        **OPINION**:
COMMISSIONER OF SOCIAL SECURITY     :
                                    :
            Defendant.              :
_____ :

**WOLFSON, United States District Judge:**

*Pro se* Plaintiff, Patricia L. Walker ("Plaintiff"), appeals from the final decision of the Commissioner of Social Security (the "Commissioner"), denying Plaintiff disability benefits under the Social Security Act ("Act"). Plaintiff contends that the record substantiates her claims that she is disabled, and requires a conclusion that he is entitled to disability insurance benefits. Plaintiff additionally challenges the adequacy of her administrative hearing, which was conducted via videoconference. After reviewing the administrative record, this Court finds that the ALJ's decision is supported by substantial evidence in the record, and accordingly, affirms the ALJ's decision to deny Plaintiff disability benefits.

**I.     OVERVIEW**

   **A.     Procedural History**

   Plaintiff initially filed an application for Social Security Disability and Disability Insurance Benefits on December 5, 2008. AR 195-200. She additionally filed an application for Social Security Income on February 20, 2009. AR at 201-04. In both applications, Plaintiff alleged her

1

disability began on June 10, 2008.  AR 197, 201.  Plaintiff's claims were first denied on April 9, 2009 and were also denied upon reconsideration on June 25, 2009.  AR 59-62; 65-84.  On July 21, 2009, Plaintiff requested a hearing before an administrative law judge (ALJ).  AR 85-102.  The hearing was held on February 2, 2011 by video conference before ALJ Gregui J. Mercado.  *See* AR 26-58 (Transcript of Hearing).  On March 14, 2011, the ALJ issued an unfavorable decision denying Plaintiff benefits on the basis that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act (the "Act").  AR at 7, 29.  Plaintiff then petitioned the Social Security Appeals Council (the "Appeals Council") for review of the ALJ's decision, which was denied.  AR at 1.  Plaintiff subsequently filed the instant action before this Court on May 14, 2013.  Although Plaintiff was represented by counsel before the ALJ and Appeals Council, *see* AR 5, 9, she has proceeded *pro se* in the instant action in this Court.

**B.     Background**

Plaintiff was born on March 31, 1965 and was 43 years old when her alleged disability began.  AR 138.  Prior to her disability, Plaintiff was employed as an unarmed security guard for approximately fifteen years.  AR 35.  Her job primarily consisted of sitting in the security booth and documenting deliveries that entered and exited the building.  AR 34.  According to Plaintiff, she initially stopped working on June 10, 2008, and attempted to go back to work in June 2009, but was unable to work for more than one day.  AR 35.  Plaintiff claims that she suffers from intermittent severe back, knee, and leg pain and experiences numbness and weakness in her hands due to carpal tunnel syndrome.  AR 35-37.  In 2009, Plaintiff had surgery on her right hand to treat her carpal tunnel syndrome.  AR 39.  According to Plaintiff, her pain lasts for up to three days and then subsides.  AR 36.  Furthermore, Plaintiff contends that she suffers from depression and anxiety.  AR 31.  Based on these contentions, Plaintiff applied for benefits under

the Act.  In connection with her application for benefits, Plaintiff visited several medical professionals for evaluation of her physical and mental health.  I detail the relevant findings of these professionals below.

### C. Review of Medical Evidence

#### 1. Physical Health

On June 10, 2008, the alleged on-set date of disability, Plaintiff visited Dr. James Taitsman, complaining of pain in her right flank, difficulty moving and lifting, and numbness and tingling in her right hand.  AR 15, 293.  A physical examination revealed some tenderness in the area of the iliac crest, pain on forward flexion and on right and left lateral bending.  AR 15, 293.  X-rays, however, did not show any abnormalities of the iliac crest, hips, or wrist.  AR 15, 293.  Plaintiff was prescribed medication for muscle spasms and inflammation, was given a splint for her wrist, underwent trigger point injection, and was diagnosed with strain of the right flank and right carpal tunnel syndrome.  AR 15, 293.  Plaintiff continued to see Dr. Taitsman during the subsequent months.  At those visits, Plaintiff reported improvement in her back pain after her physical therapy and steroidal injections.  AR 289, 291.  Plaintiff continued to complain of tenderness and numbness in her right hand and wrist, and she reported tenderness in the lower cervical and thoracic region.  AR 281-82, 289, 291.

To address Plaintiff's on-going complaints, Plaintiff was referred to Hamilton Healthcare Center.  AR 16, 295-321.  After a physical examination and imaging studies, Plaintiff was diagnosed with cervical neuralgia, lumbar disc syndrome, lumbar radiculitis/neuralgia, thoracic spinal pain, and right wrist pain.  AR 16, 308-13.  She was again prescribed physical therapy, medications, trigger point injections, and a wrist splint, all of which helped reduce her pain.  AR 16, 308.

Plaintiff was subsequently referred to Dr. Marc Kahn for an orthopedic evaluation of her wrist and cervical and lumbar spine. AR 16, 317-18. While Plaintiff's electromyogram test of the upper extremities did not indicate carpal tunnel syndrome, Dr. Kahn determined that Plaintiff was part of a small group of patients who will have a negative electromyography study but do actually have carpal tunnel syndrome. AR 16, 317-18, 370-71. Dr. Kahn recommended and performed a carpal tunnel decompression of Plaintiff's right wrist in January 2009. AR 16, 319, 370-71. Following the surgery, Plaintiff's wrist healed well and Plaintiff exhibited only mild tenderness, mild loss of motion, and minimally weak grip strength. AR 16, 320, 365-69. Dr. Kahn also treated Plaintiff for her ongoing back pain, and at an August 10, 2009 visit, Dr. Kahn reported that Plaintiff's pain was improving with physical therapy. AR 16, 363.

During the time of Plaintiff's alleged disability, Plaintiff also saw Dr. Clinton Ogolo, an internist, who determined that the Plaintiff was able to lift, carry, push and pull 20 pounds, had no limitations for sitting, but could only stand and walk less than two hours a day. AR 16, 359-60. Plaintiff also visited a rheumatologist, Dr. Richard Gordon, in 2010. AR at 17, 390-401. According to Dr. Gordon's records, Plaintiff exhibited fair mobility of the knees with some tenderness, excellent handgrip, no inflammatory process, and no synovitis or bony deformity of the small joints of the hands or wrists. AR 17, 390-91.

In connection with her application for Social Security benefits, Plaintiff was seen by Dr. Isabella Rampello, the State Agency's consulting physician, and Dr. Melvin Golish, who is also a physician from the State Agency. AR 17. Dr. Rampello completed a physical residual functional capacity ("RFC") assessment on the Plaintiff. AR 339-46. In terms of Plaintiff's physical limitations, Dr. Rampello concluded that Plaintiff can frequently lift 10 pounds, stand and/or walk for a total of at least 2 hours in an 8-hour workday, and sit for about 2 hours in an 8-

hour workday. AR 17, 340-41. Additionally, Dr. Rampello concluded that Plaintiff can occasionally climb ramps and stairs, kneel, crouch, and crawl but that Plaintiff can never climb ladders, ropes, or scaffolds. AR 17, 340-41. Dr. Golish agreed with Dr. Rampello's determinations and reported that there was no significant change to Plaintiff's conditions. AR 17, 361.

2.  **Mental Health**

Plaintiff alleges that she suffers from depression and anxiety and experiences difficulty remembering things. AR 13, 42. Dr. Clinton Ogolo, Plaintiff's internist, noted a diagnosis of depression/anxiety. AR 377. Plaintiff claims that she suffers from panic attacks and, at some point, was prescribed medication for her nerves. AR 14. The ALJ concluded, however, that Plaintiff's medical history record does not corroborate Plaintiff's alleged panic attacks. AR 13.

Plaintiff was referred to Dr. Pradip Gupta for a psychological consultation. AR 13, 322-24. During this consultation, Plaintiff related to Dr. Gupta that she used to take Paxil for her depression and anxiety, and that her depression has lessened in recent months. AR 322. Plaintiff informed Dr. Gupta that she had never been hospitalized for psychiatric reasons and was not currently experience suicidal thoughts. AR 322. According to Dr. Gupta, Plaintiff appeared coherent and was groomed casually. AR 323. Dr. Gupta concluded that the Plaintiff had dysthymic disorder, but was capable of handling her funds.[1] AR 323.

Plaintiff was also seen by Dr. Jane Curran, the State Agency's consulting physician, to evaluate her mental condition. After the evaluation, Dr. Curran concluded that Plaintiff's

---

[1] Dr. Gupta also assigned Plaintiff a Global Assessment of Functioning ("GAF") of 55. Tr. 323. A GAF is used to asses psychological functioning, *see* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., TR) 2000), and Plaintiff's GAF signifies moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

limitations stemmed from physical, not mental problems.  AR 337.  She further rated Plaintiff's psychiatric condition as "not severe."  AR 337.  A State Agency psychologist, Dr. Joseph Wieliczko, concurred with this assessment.  AR at 362.

### D. Testimonial Record

#### 1. Plaintiff's Testimony

Plaintiff testified before the ALJ via videoconference on February 2, 2011.  AR 28.  Plaintiff testified that since the date of her alleged disability she attempted to return to work in July of 2008 but was unable to work more than one day due to her medical conditions.  AR 35.  Plaintiff testified that she experiences shooting pain in her back, pain in her hands and has difficulty sitting for long periods of time.  AR 35-36.  According to Plaintiff, her pain will subside and then return for periods of up to three days for no apparent reason.  AR 36.  Plaintiff stated that she can sit and stand for approximately thirty minutes and that she can walk for approximately half a block.  AR 36-37.  When questioned about the pain in her hands, Plaintiff testified that she experiences numbness, swelling, cramps, loss of strength, and occasionally loses her grip on things.  AR 38.

With regards to her medical treatment, Plaintiff testified that her physical therapy helped relieve her pain somewhat but that she felt that her right hand surgery further exacerbated her hand problems.  AR 39.  Plaintiff additionally testified that she will be having surgery on both of her knees.  AR 39-40.  Turning to her mental health treatment, Plaintiff stated that she was seen by a therapist and a psychiatrist for five months and that she last saw a mental health professional in 2009.  AR 40-41.  Plaintiff also testified that she briefly took medication for her anxiety but that the medications gave her suicidal thoughts; however, Plaintiff stated that she was

not currently experiencing suicidal thoughts but that she gets irritated by other people easily. AR 41-42.

When asked about how her physical problems interfered with her ability to work as a security guard, Plaintiff explained that her hand would begin to hurt and eventually go numb from writing reports. AR 45-49. Plaintiff additionally testified that her job caused her stress, which she believes increased her blood pressure and caused chest pain. AR 45-49.

### 2. Vocational Expert Testimony

Dr. Hector Deablos, an independent vocational expert, also testified at the hearing. AR 50. Dr. Deablos testified that he had reviewed the documentary record and was prepared to testify. AR 51. Dr. Deablos summarized Plaintiff's vocational profile, identifying that Plaintiff worked as a security guard, which is characterized by a light exertional level, is semi-skilled, and provided Plaintiff with no transferable skills. AR 51-52.

The ALJ posed a series of hypotheticals to Dr. Deablos. First, the ALJ asked if someone who was limited to light exertion would be able to perform Plaintiff's past work. AR 52. Dr. Deablos responded affirmatively. AR 52. Then, the ALJ asked Dr. Deablos if someone who was limited to sedentary exertion would be able to perform Plaintiff's past work, to which Dr. Deablos responded no. AR 52. The ALJ then asked Dr. Deablos whether someone who was limited to sedentary exertion would be able to "perform other work which exists in the national economy which is compatible with [Plaintiff's] age, education, and work experience?" AR 52. Dr. Deablos responded affirmatively and proceeded to identify specific jobs that met the hypothetical. AR 52-53. The relevant jobs he identified were: (1) switch board operator, (2) bin clerk, and (3) payroll clerk. AR 53. Dr. Deablos also provided the number of each one of those

jobs that existed in the metropolitan New York area, jobs which were, respectively: (1) 1,830, (2) 3,140, and (3) 640.  AR 53.

Additionally, the ALJ asked if given

> full credibility to [Plaintiff's] complaints here today, which are most directly related with the presence of pain . . . in her neck, in her back, and her knees . . . described as strong and severe at times . . . . [Plaintiff] states that she is in constant pain . . . [that] affects attention, concentration, and work pace. Under those circumstances, could such a person perform [Plaintiff's] prior work and/or the jobs that you stated before or any other jobs in the national economy?

AR 54.  Dr. Deablos replied that such a level of pain would make it impossible for someone to perform the relevant jobs.  AR 54.  The ALJ then altered the hypothetical to be as follows, "the pain is light and responds adequately to medication . . . [and] would have no direct adverse effect on attention, concentration, and work pace."  AR 54.  In that situation, Dr. Deablos stated that a person would be able to perform the relevant jobs he had previously described.  AR 54.

The ALJ then moved to hypotheticals specifically relevant to Plaintiff's hand pain and fine manipulation skills.  With regards to Plaintiff's previous employment as a security guard, Dr. Deablos stated that problems with fine manipulation would not impair someone's ability to perform such a job.  AR 55.  However, Dr. Deablos stated that fine manipulation problems would make it difficult to perform the jobs he described earlier.  AR 55.  The ALJ asked Dr. Deablos if there were any jobs at the sedentary level which did not require fine manipulation.  AR 56.  Dr. Deablos responded that such jobs did not exist, but that there were jobs at the light level that did not require fine manipulation.  AR 56.

The ALJ finally asked hypotheticals specific to the Plaintiff's alleged mental health issues.  In response to the ALJ's questions, Dr. Deablos said that if someone was experiencing memory problems that affected his or her ability to understand and follow directions and if someone was easily aggravated and irritated by other people, that person would not be able to

perform any of the jobs that Dr. Deablos described or perform Plaintiff's past employment. AR 56-57.

### E. The ALJ's Findings

In a decision dated March 14, 2011, the ALJ initially determined that Plaintiff met the insured status requirements of the Social Security Act, and would continue to meet them through December 31, 2013. AR 10. After reviewing the record and applying the relevant law, the ALJ determined that Plaintiff was not under a disability within the meaning of the Social Security Act during the applicable disability period. AR 11.

In reaching this conclusion, the ALJ applied the standard five-step sequential evaluation process to determine if Plaintiff satisfied her burden of establishing disability.[2] AR 11-19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of June 10, 2008. AR 12. At step two, the ALJ found that Plaintiff had the following severe impairments: carpal tunnel syndrome-status post decompression, spondylitic changes at the C5-C6 level, annular bulging at the L3-L4, L4-L5, L5-S1 levels, central stenosis, left paracentral disc protrusion at the L5-S1, and displacement of the proximal left S1 root sleeve. AR 12-13. The ALJ, however, found that Plaintiff's mental condition was not severe. AR 14. The ALJ based this finding on the lack of medical evidence showing psychiatric treatment, and gave significant weight to the opinions of the State Agency's physicians, Dr. Curran and Dr. Wielickzo, who both opined that the Plaintiff's mental condition was not severe. AR 14; *see supra* Part I.C.2. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the SSA that would automatically find Plaintiff disabled. AR 13.

---

2    *See infra* Part II.B.

At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in CFR 404.1567(a) and 416.967. AR 14. The ALJ employed a two-step process whereby the ALJ first evaluated whether there was "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." AR 14-15. After determining that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged pain," the ALJ evaluated whether Plaintiff's assertions as to the "intensity, persistence and limiting effects" of her symptoms were credible. AR 15. As to that issue, the ALJ found that Plaintiff's statements regarding the extent of her pain and other symptoms were not credible because they were inconsistent with Plaintiff's medical history and RFC. AR 15. Specifically, the ALJ noted that Plaintiff experienced "significant improvement of her back pain" when she was treated by Dr. Taitsman. AR 15. Similarly, the ALJ referenced Dr. Kahn's determination that Plaintiff "was making good progress." AR 16. With respect to Plaintiff's carpal tunnel syndrome, the ALJ noted that Plaintiff's condition improved following her January 2009 surgery and after subsequent physical therapy. AR 16.

The ALJ gave significant weight to Dr. Ogolo's assessment that Plaintiff was able to "lift, carry, push and pull 20 pounds, stand and walk less than 2 hours per day, and had no limitation for sitting." AR 16. The ALJ also noted that diagnostic studies of Plaintiff's knees showed "only mild narrowing of the medical compartment suggesting early osteoarthritis" and were otherwise normal. AR 16. The ALJ also gave significant weight to Dr. Gordon's assessment of the Plaintiff because it was "consistent with the other medical evidence of record." AR 17. The ALJ gave the greatest weight to the opinion of the State Agency personnel, specifically the opinions of Dr. Rampello and Dr. Golish, who found that the Plaintiff "had no manipulative

10

limitations, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl." AR 17.

Overall, the ALJ determined that Plaintiffs "conditions have not worsened" and that "treatment has resulted in a baseline level of improvement." AR 17. While the ALJ acknowledged that Plaintiff has some limitations and experiences pain, he determined that Plaintiff's limitations and pain did not rise to the level of disability. AR 17. The ALJ concluded that Plaintiff "retains the residual functional capacity for sedentary work and has no manipulative limitations." AR 18.

In light of the RFC assessment and based on the testimony of the vocational expert, the ALJ determined that Plaintiff could not perform her past relevant work as a security guard. AR 18. However, the ALJ accepted the testimony from the vocational expert, Dr. Guerra, that Plaintiff would be able to perform the work of a switchboard operator, billing clerk, and payroll clerk. AR 19. Based on these findings, the ALJ concluded that the Plaintiff is "not disabled" under the SSA and denied Plaintiff benefits for disability and disability insurance benefits and for supplemental security income. AR 19-20.

## II.   DISCUSSION

### A.   Standard of Review

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see*

*Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

### B.  Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.;* § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* § 404.1520(c); *see Plummer*, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one

impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  *Id.*  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work.  20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.  If the claimant is able to perform previous work, the claimant is determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  *Plummer*, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  *Id.*

### C. Plaintiff's Arguments

As previously mentioned, Plaintiff is proceeding *pro se*.  In her scant briefing to the Court, as well as in her Complaint, Plaintiff asserts that she was improperly denied benefits because her hearing before the ALJ was held via a videoconference, and thus the ALJ was unable to take full account of Plaintiff's pain and other complaints.  Implicit in Plaintiff's argument is her claim that

14

the ALJ's decision is not supported by the record because it does not accurately account for Plaintiff's subjective complaints. Thus, I view Plaintiff's instant appeal as a two-fold challenge to (i) the use of videoconferencing for Plaintiff's appearance before the ALJ, and (ii) the ALJ's rejection of Plaintiff's subjective complaints in finding that Plaintiff was not disabled. I address each of these challenges in turn.

At the outset, I note that Plaintiff has proffered nothing to show that, as a matter of law or procedure, a videoconference is an improper mechanism for adjudicating a social security claim. To the contrary, the applicable regulations explicitly provide the ALJ with the authority to allow or direct the appearance of any party via "video teleconferencing." 20 C.F.R. § 404.936(c). The regulations further set forth a specific procedure for a claimant to object to a video teleconference hearing, which will then constitute good cause for the ALJ to convert the video teleconference hearing into an in-person one. *Id.* § 404.936(d)-(e). Here, the record contains nothing to show that at any point prior to or at the hearing did Plaintiff, who was also represented by counsel, object to conducting the hearing via teleconference. Without any objection, the ALJ could not have been aware that Plaintiff wished to proceed at an in-person hearing. There is no error in this regard.[3] Moreover, even assuming *arguendo* that the ALJ erred by not holding a

---

[3] Indeed, even in circumstances where a claimant objects to a hearing but fails to follow the propose procedures set forth by the regulations, there is no abuse of discretion if the ALJ chooses not to reschedule the hearing:

> Although objecting to a video teleconferenced hearing constitutes good cause for rescheduling an administrative hearing in most instances pursuant to 20 C.F.R. § 404.936(e), the objection must be in compliance with § 404.936(d) which requires that a claimant notify the ALJ at the earliest possible opportunity before the time set for the hearing if she requests an in-person hearing. Claimant did not comply with § 404.936(d). Thus, it was within the ALJ's discretion to deny the request to reschedule the hearing.

hearing in person—the error would be harmless because, as explained below, the ALJ's decision is supported by substantial evidence in the record and Plaintiff's subjective complaints were rejected by the ALJ as contrary to the objective medical evidence.

Plaintiff's contention that the ALJ was unable to adequately appreciate Plaintiff's complaints of pain or observe her condition is insufficient to warrant another hearing in light of the record. As the regulations and case law make clear, in making a determination on benefits, the ALJ must consider all evidence before her. *See Plummer v. Apfel*, 186 F.3d at 429; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). A claimant's allegations of pain and other subjective symptoms are to be considered, *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529); however, a claimant's own testimony should only be given great weight when it is corroborated by competent medical evidence. *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Otherwise the ALJ is free to discount a claimant's subjective complaints by finding them to be not credible in light of the objective medical evidence.[4] *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999).

In this case, the ALJ determined that Plaintiff's testimony and subjective complaints of debilitating pain were not supported by the medical record. As previously noted, the ALJ found that although Plaintiff had pain in her back and hand/wrist, the medical records of Dr. Taitsman and Dr. Kahn showed that Plaintiff had experienced "significant improvement" and "was making good progress." *See* AR 15-16. The ALJ also noted that the record evidence demonstrated that, during her RFC assessment, Plaintiff "had no manipulative limitations, and could occasionally

---

*Pittman v. Colvin*, Civ. No 3:12-CV-51-CDL, 2013 WL 4539674, at *2 (M.D. Ga. Aug. 27, 2013).

[4] Even where a claimant's subjective complaints are consistent with objective medical evidence, the ALJ may nevertheless reject such allegations as long as the ALJ provides an explanation for doing so. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter v. Harris*, 642 F.2d 700, 707(3d Cir. 1981).

climb ramps and stairs, balance, stoop, kneel, crouch and crawl." AR 17. Significantly, the ALJ found that the record evidence made clear that Plaintiffs "conditions have not worsened" and that "treatment has resulted in a baseline level of improvement." AR 17.

In light of this objective record evidence—and, it bears noting, in the absence of *any* record evidence to the contrary—it was properly within the ALJ's discretion to find Plaintiff's subjective statements that her pain and other conditions were disabling to be not credible. *Holiday v. Barnhart*, 76 F. App'x 479, 482 (3d Cir. 2003) (finding no error in ALJ giving little weight to claimant's testimony regarding severity of impairment where testimony not supported by the record); *see also Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability."). In that regard, because the ALJ chose to discredit Plaintiff's subjective complaints in their entirety, Plaintiff's contention that she should be afforded an in-person hearing to better convey her claims is misplaced. Plaintiff's complaints simply are not a factor in the ALJ's decision—a decision which is supported by uncontradicted, objective medical evidence.

In sum, given the deferential standard of review applicable here, the Court finds that the ALJ's decision that Plaintiff is not disabled to be supported by substantial evidence in the record. Thus, even assuming for the sake of argument that the ALJ erred in holding a videoconference hearing—notwithstanding the regulations permitting such a hearing—this error would be harmless because the ALJ's decision was not dependent on observation of Plaintiff or her subjective complaints. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (discussing harmless error in the context of administrative review); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[R]emand is not required here because it would not affect the outcome of the case."). Beyond Plaintiff's claims regarding the hearing procedures and her subjective complaints, the

Court discerns no other basis for challenging the ALJ's determination to deny Plaintiff disability benefits, and accordingly, affirms the ALJ's decision.

**CONCLUSION**

For the reasons set forth above, the ALJ's decision is AFFIRMED.

An appropriate Order shall follow.


Dated: April 3, 2014                                    /s/ Freda L. Wolfson
                                                        Freda L. Wolfson, U.S.D.J.